UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JOAQUIN LOPEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. ED CV 15-00976-DFM<br><br>MEMORANDUM OPINION AND ORDER |

    Plaintiff Joaquin Lopez ("Lopez" or "Plaintiff") appeals from the final decision of the Administrative Law Judge ("ALJ") denying his application for disability insurance benefits and supplemental social security income benefits. For the reasons stated below, the ALJ'S decision is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

    Lopez applied for disability insurance benefits and supplemental social security income in June 2012, alleging disability beginning November 19, 2008. Administrative Record ("AR") 180-97. His claims were denied initially and again upon reconsideration, at which point Lopez requested a hearing before the ALJ. See AR 127-31, 135-40.

Lopez testified in the ALJ hearing that he stopped working when he was hit by a truck in 2008. AR 38-40. He testified that as a result of this accident, he broke both legs, cracked his pelvis, had stomach surgeries, and multiple hernias. AR 40. Lopez's medical records confirm that on November 20, 2008, he was admitted to a hospital with numerous severe injuries and an alcohol level of 0.31 after being hit by a truck while riding his bicycle. See AR 263-65. Lopez testified that he cannot walk without a walker due to nerve problems in his left foot, and that he trips unless he keeps a brace on his foot. AR 41. Lopez testified that his doctor prescribed a wheelchair after the truck hit him, but later changed the prescription to a walker to help Lopez lose weight. AR 43-44. Lopez testified that he uses the walker every time he leaves his house, and uses the furniture or walls to support himself when he moves around inside the house. AR 44. Lopez also testified that he rides a bicycle once a week. AR 53. He rides his bicycle downhill in the quarter mile from his house to the bus stop, and sometimes walks but sometimes rides his bicycle uphill on the way back. AR 56.

Applying the five-step sequential evaluation process, the ALJ found at step two that Lopez had the severe impairments of "left foot drop; bilateral femur fracture; left pelvis fracture; status post left total hip replacement; scapula and rib fracture; thoracic vertebral fracture with neck, back and shoulder pain, hepatitis C; ventral and inguinal hernia, status post hernia surgical repair; history of pneumothorax; gastroesophageal reflux disease; esophageal ulcer; asthma; and obesity." AR 16.

At step four, the ALJ concluded that Lopez had the residual functional capacity ("RFC") to perform light work with certain restrictions, including standing and walking for two hours during an eight-hour workday. AR 18. The ALJ found that Lopez's testimony about his inability to walk without a walker was less than fully credible. AR 19. The ALJ noted that while Lopez's medical

records reflected that he came into appointments with a walker on a few occasions, the record also demonstrated that he could ride his bicycle and engaged in exercise on a regular basis. AR 19; see AR 1110 (noting that as of November 2011, Lopez exercised 150 or more minutes for five days a week at a moderate or strenuous level); AR 1114 (noting that as of December 2011, Lopez exercised 120 minutes for five days a week at a moderate or strenuous level). The ALJ acknowledged that Lopez's medical records reflected multiple falls, but noted that records from February 2013 showed that Lopez's falls occurred because he was not wearing his brace, and that on these occasions Lopez was walking without a walker. AR 19; see AR 1576 ("Falls occurred both indoors and outdoors without assistive device. Usually falls when not wearing ankle foot orthosis due to foot drop.").

      The ALJ used a vocational expert to determine the extent to which Lopez's inability to perform all or substantially all of the requirements of light work eroded the occupational base. See AR 25-26. The vocational expert testified that, even with the two-hour limitation on standing and walking, Lopez could perform work as an electronic worker, bench assembler, and production assembler—and that even at fifty percent erosion, approximately 58,000 of these jobs existed in the national economy and 800 existed in the regional economy. See AR 26; AR 67-69. Relying on this testimony, the ALJ concluded at step five that Lopez was not disabled because there was work available in significant numbers in the national and regional economy which he could perform despite his impairments. AR 25-26.

## II.
## ISSUE PRESENTED

      The parties present two issues. First, the parties dispute whether the ALJ properly classified Lopez's RFC as one for "light work" while limiting him to standing or walking for two hours in an eight-hour day. See Joint Stipulation

("JS") at 4. Second, the parties dispute whether the ALJ erred by failing to include Lopez's stated need for a walker in the RFC finding. Id.

### III.
### DISCUSSION

#### A. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

#### B. RFC Classification

The parties agree that Lopez's RFC falls somewhere between light and sedentary work. See JS at 5, 9. The parties also appear to agree that, had Lopez been classified as sedentary, the medical-vocational grids would have resulted in his being classified as disabled. See JS at 6-8. But the parties disagree as to whether the ALJ should have classified Lopez's RFC as "sedentary" instead of "light," given that Lopez was restricted to no more than two hours of walking or sitting a day. See JS at 4-11.

The Social Security Administration regulations describe "sedentary work" as involving "sitting, [although] a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567, 416.967. A job is in the "light work" category even though the "weight lifted may be very little . . . when it requires a good deal of walking or standing, or . . . <u>sitting most of the time</u> with some pushing and pulling of arm or leg controls." <u>Id.</u> (emphasis added). While the "primary difference between sedentary and most light jobs" is that "most" light jobs require a "good deal" of walking and sitting, some light jobs do involve "sitting most of the time" with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work. Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).

Lopez's limitations placed him between the definitions of light and sedentary work. The ALJ therefore properly consulted a vocational expert regarding whether Lopez could perform substantial, gainful work in the economy. <u>See</u> SSR 83–12(2)(c), 1983 WL 31253, at *3 (Jan. 1, 1983) ("In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, ... [vocational specialist] assistance is advisable for these types of cases."); <u>Moore v. Apfel</u>, 216 F.3d 864, 870 (9th Cir. 2000) ("SSR 83–12 directs that when a claimant falls between two grids, consultation with a [vocational expert] is appropriate."). As noted above, the vocational expert opined that, even with the two-hour limitation on walking and at fifty percent erosion, approximately 58,000 light duty jobs fitting this restriction existed in the national economy and 800 existed in the regional economy. <u>See</u> AR 26; AR 67-69.

///

Lopez argues that the ALJ should have automatically classified Lopez as limited to sedentary work under SSR 83-12 because of the two-hour limitation on walking and sitting. See JS at 5-6. Lopez cites one Western District of Washington case, Merritt v. Colvin, for support. No. 14-05964, 2015 WL 4039355 (W.D. Wash. July 2, 2015). In that case, the district court held that a two-hour limitation on standing and walking was "significant" enough to automatically "better coincide[] with the sedentary exertional work level." Id. at *6.

This Court disagrees with the holding in Merritt. Based on that holding, any person who cannot walk or stand for more than two hours in a day should be classified as sedentary. That is not what the law requires or the Social Security Rulings reflect, contrary to Lopez's argument that SSR 83-12 stands for the proposition that an ALJ may not classify a person with a two-hour walking and standing limitation at the lower exertion level. See JS at 5-6. In fact, SSR 83-12 states that "if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of 'Disabled.'" SSR 83-12 at 2. This language is not a mandate, but a reminder to the ALJ to consider whether a limitation is so significant that the person should be classified at a lower level of exertion. If a two-hour limitation on standing and walking automatically resulted in a sedentary classification, the regulations would so provide. Instead, the regulations specifically recognize that certain light duty jobs will involve "sitting most of the time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Here, the ALJ considered the evidence before him and determined that Lopez's limitations were not so significant to warrant a "sedentary" classification. Numerous other courts have found no fault with "light work" classifications with two-hour limitations on walking and standing. See, e.g.,

Martinez v. Colvin, No. 14-1703, 2016 WL 270911, at *3 (D. Or. Jan. 20, 2016); Avilez v. Colvin, No. 14-732, 2015 WL 1966916, at *6 (C.D. Cal. Apr. 30, 2015); Ortiz v. Colvin, No. 14-61, 2014 WL 7149544, at *4 (C.D. Cal. Dec. 15, 2014); Dills v. Astrue, No. 09-1380, 2011 WL 1600691, at *7 (D. Or. Apr. 27, 2011). Lopez does not dispute that he is able to perform the jobs identified by the vocational expert, and identifies no inconsistency between the ALJ's RFC assessment and the finding that Lopez can perform those jobs. Remand is not warranted on this basis.

### C. Lopez's Alleged Need for a Walker

Lopez also argues that the ALJ improperly failed to include, and failed to explain the exclusion of, Lopez's alleged need for a walker in the ALJ's RFC finding. See JS at 11.

Lopez misstates the record. The ALJ explained that the medical evidence conflicted, and that he did not find Lopez's claim that he needed to use a walker credible. In reaching this conclusion, the ALJ explained:

> The claimant has provided inconsistent statements regarding his abilities. The claimant testified he was unable to walk or stand without assistance from use of a walker or wheelchair. The records do document on a few occasions that the claimant came into the appointment with a walker. However, the records also document that the claimant was able to ride his bicycle, and engaged in moderate to strenuous exercises five days a week for an hour twenty minutes . . . The claimant testified at the hearing he only rode his bike down the hill to catch a bus. He stated he only sometimes got off his bike to walk it up the hill, which suggests that there are some occasions, the claimant bikes up the hill. The claimant has claimed that he has fallen multiple times, and the records do note multiple incidents . . . however, the records also

>indicate that these falls occurred primarily because the claimant was not using an assistive device and was not using his left foot brace . . . The undersigned has found that although there are reference [sic] about use of an assistive device, the claimant's ability to ride a bike is inconsistent with the need to use a walker or wheelchair.

AR at 19-20.

Lopez does not attack the ALJ's credibility finding, but rather argues that the ALJ did not explain why it did not reference Lopez's alleged need for a walker in the RFC. See JS at 11-16. The ALJ properly weighed the medical evidence of record in assessing whether Lopez required a walker during the 2 hours of standing and walking during a workday. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.1982) (noting it is ALJ's role to resolve conflicting medical reports and opinions); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (noting it is ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence). This Court will not disturb the ALJ's finding in this regard.

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: February 3, 2016

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

8